UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH O'SHEA, ET AL.,** **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1926** |
| **OCEAN HARBOR CASUALTY INSURANCE COMPANY,** **Defendant** | **SECTION: "E" (5)** |

## ORDER AND REASONS

Before the Court is a Motion to Remand to State Court ("Motion to Remand") filed by Plaintiffs Deborah O'Shea and Joseph O'Shea.[1] Because the Court finds that Defendant timely removed this case, the motion is **DENIED.**

## PROCEDURAL BACKGROUND

Plaintiffs filed this case in the 24th Judicial District Court, Jefferson Parish, Louisiana, on March 28, 2023.[2] Defendant removed it to this Court on June 7, 2023.[3] Plaintiffs filed the instant motion to remand on July 7, 2023,[4] and Defendant filed its opposition to the motion to remand on July 25, 2023.[5] The Court heard oral argument on the motion on August 23, 2023.[6]

## FACTUAL BACKGROUND

This case is a dispute over insurance coverage in the aftermath of Hurricane Ida, which struck the Louisiana coast on August 29, 2021.[7] At the time of the hurricane,

---

[1] R. Doc. 9.
[2] *See* R. Doc. 1 at p. 1.
[3] *Id.*
[4] R. Doc. 9.
[5] R. Doc. 11.
[6] R. Doc. 13.
[7] R. Doc. 1-5 at p. 2.

1

Defendant insured Plaintiffs' property in Metairie, Louisiana.[8] Plaintiffs' property was damaged by the storm, and Plaintiffs accordingly sought payment from Defendant.[9] Plaintiffs allege Defendant did not pay all amounts due under the insurance policy.[10]

The amounts and timing of Plaintiffs' various demands are the keys to disposition of this motion.

On March 14, 2023, Plaintiffs, through counsel, issued a demand letter to Defendant seeking $70,608.62 to settle their claim.[11] This total was based on claimed damages of $11,560.88 under the insurance policy, $41,528.31 in bad faith penalties under Louisiana law, and $17,519.43 in attorneys' fees.[12] Defendant made no payment to Plaintiffs in response to this letter.

On March 28, 2023, Plaintiffs sued Defendant in Louisiana state court.[13] Defendant was served with the state court petition no later than April 19, 2023.[14] Plaintiffs' state court petition made only one specific monetary claim against Defendant: "$11,560.88 for contractual damages,"[15] the same amount sought in the demand letter.[16] Elsewhere in their petition, Plaintiffs made claims for bad faith penalties and "reasonable attorney's fees and costs," just as the demand letter sought.[17] Unlike the demand letter, the petition assigned no specific amounts to these claims; the petition only stated that,

---

[8] *Id.*
[9] *Id.*
[10] *See generally* R. Doc. 1-5.
[11] R. Doc. 11-3. This demand letter is dated March 14, 2022, but the parties' recounting of the procedural history and context provided by other evidence makes clear this is a typographical error and should read March 14, 2023.
[12] *Id.* at p. 2.
[13] R. Doc. 1-5.
[14] Plaintiffs allege the date of service was April 19, 2023. (R. Doc. 9-1 at p. 4.) Defendant says this date was "on or about April 18, 2023" (R. Doc. 11 at p. 2) and has provided a copy of a summons served through the Louisiana Secretary of State stamped April 18, 2023. (R. Doc. 11-1 p. 2.) The date of service was either April 18 or 19, 2023, but the difference is ultimately immaterial to the outcome of Plaintiff's motion.
[15] R. Doc. 1-5 at p. 5.
[16] R. Doc. 11-3 at p. 2.
[17] R. Doc. 1-5 at p. 5

under Louisiana law, Defendant may be liable for various bad-faith penalties: "50% of the [contractual] amount due" and an additional penalty of "up to two times the actual damages sustained or five thousand dollars, whichever is greater."[18] Plaintiffs also sought damages for their "mental-anguish, aggravation, and inconvenience" sustained as a result of Defendant's alleged failure to satisfy its obligations under the policy, but did not specify the amount of these damages.[19] In sum, the state court petition sought contractual damages in the amount of $11,560.88, bad faith penalties, attorneys' fees, and mental anguish damages, but it did not allege a total amount of damages for these claims.

After filing their lawsuit in state court, Plaintiffs received additional estimates of the damage to their home.[20] On May 8, 2023, Plaintiffs issued another demand letter to Defendant seeking the much larger sum, based on those estimates, of $330,175.01. This total reflected $116,606.69 for contractual damages owed under the insurance policy, bad-faith penalties of $94,051.22, attorneys' fees of $69,517.11, and $50,000 for mental anguish.[21]

Exactly 30 days later, on June 7, 2023, Defendant filed its Notice of Removal in this Court.[22]

## **LAW AND ANALYSIS**

Defendant removed this action pursuant to 28 U.S.C. § 1441 and 1446, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. Neither requirement of diversity jurisdiction—that the parties be citizens of different states, and that the amount in

---

[18] *Id.* (citing La. R.S. § 22:1973).
[19] *Id.* Louisiana law forbids the pleading of a "specific monetary amount of damages" but permits "a general allegation that the claim exceeds or is less than the requisite amount" required for federal jurisdiction or other purposes. La. Code of Civ. Pro. art. 893(A)(1).
[20] *See* R. Doc. 11-4.
[21] R. Doc. 11-4 at p. 2.
[22] R. Doc. 1.

3

controversy exceed $75,000[23]—is in dispute. Rather, at issue is *when* it became clear that the amount-in-controversy requirement was satisfied, and in turn, whether Defendant's June 7, 2023 Notice of Removal was timely under 28 U.S.C. § 1446.

Plaintiffs argue that Defendant's removal was untimely. They contend Defendant's time to remove expired on May 19, 2023, 30 days after Defendant was served with Plaintiffs' state court petition on April 19, 2023.[24] Defendant responds that its 30-day timeline to remove the case from state court did not begin until it received the second demand letter on May 8, 2023, and, as a result, its Notice of Removal *was* timely.[25] Defendant's argument prevails.

### A. 28 USC § 1446 offers two tests for timely removal.

Two provisions of § 1446 are relevant here.[26] The first, § 1446(b)(1), requires that when a case satisfies the requirements for federal jurisdiction and is thus removable from state court, any notice of removal "shall be filed within 30 days" of a defendant's receipt of "the initial pleading setting forth the claim for relief."[27] In the diversity-jurisdiction context, the Fifth Circuit has ruled that to trigger this 30-day timeline under § 1446(b)(1), a plaintiff's initial state court pleading must contain "a specific allegation that damages are in excess of the federal jurisdictional amount."[28]

The second relevant provision, § 1446(b)(3), provides a timeline for removal when the initial pleading does not make clear the case is removable, but some later filing does.

---

[23] 28 U.S.C. § 1332(a).
[24] *See* R. Doc. 9-1.
[25] *See* R. Doc. 11.
[26] *See Chapman v. Powermatic Inc.*, 969 F.2d 160, 161 (5th Cir. 1992) ("When read as a whole, § 1446(b) provides a two-step test for determining whether a defendant timely removed a case."); *see also, e.g.*, *Wright v. Nat'l Interstate Ins. Co.*, 2017 WL 344283 (E.D. La. Jan 24, 2017).
[27] § 1446(b)(1).
[28] *Chapman*, 969 F. 2d. at 163.

4

In that instance, "a notice of removal may be filed within 30 days after receipt by the defendant" of "an amended pleading, motion, order or *other paper* from which it may be first ascertained that the case is one which is or has become removable."[29] The definition of "other paper" includes "information relating to the amount in controversy" in those instances when "the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed" the $75,000 requirement for federal diversity jurisdiction.[30] Further, "other paper" means that paper "received by a defendant only *after* that defendant has received the initial pleading"[31] and produced by some "voluntary act by the plaintiff." That is, "'the defendant's subjective knowledge' cannot begin the clock for removal."[32]

### B. Section 1446(b)(3) applies to this case, and Defendant's removal was timely upon receipt of the "other paper" in the form of Plaintiffs' second demand letter.

The parties' core disagreement is which provision of § 1446 applies, and thus, when the 30-day period for Defendant to file its Notice of Removal began.

Plaintiffs argue that the 30 days began no later than April 19, 2023, the date Defendant was served with Plaintiffs' March 28, 2023 state court petition.[33] The essence of Plaintiff's argument is that, even though their state court petition did not clearly allege damages in excess of $75,000,[34] Defendant should have known by "reasonable inference"[35] that the amount in controversy would exceed this jurisdictional amount

---

[29] § 1446(b)(3) (emphasis added).
[30] § 1446(c)(3)(A).
[31] *Chapman*, 969 F.2d at 164 (emphasis added).
[32] *Daverede v. State Farm Fire & Cas. Co.*, CV 22-463, 2022 WL 1963713, at *2 (E.D. La. June 6, 2022) (quoting *S.W.S. Erectors, Inc., v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996)).
[33] R. Doc. 9-1 at pp. 3–4.
[34] *See* R. Doc. 1-5.
[35] R. Doc. 9-1 at p. 3.

5

because the demands in Plaintiff's state court petition were the same as those in the first demand letter, totaling $70,608.6, [36] *plus* demands for mental anguish damages. Plaintiffs contend it should have been obvious to Defendant upon service of the state court petition that the mental anguish damages would exceed the additional $4,391.38 necessary for total damages to meet the amount-in-controversy requirement of § 1332.[37]

Defendant responds that even when reading the state court petition in light of the first demand letter, "there was a lack of sufficient supporting evidence to allege an amount in controversy over the jurisdictional threshold."[38] Rather, Defendant argues, only when it received the "updated settlement demand" on May 8, 2023, seeking $330,175.01 in damages, did it have "unequivocally clear evidence that the amount in controversy now met the jurisdictional threshold," and thus its June 7, 2023 Notice of Removal was timely.

For a purported diversity-jurisdiction case to be removable upon the initial pleading, that pleading must "affirmatively reveal on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court."[39] As noted above, Louisiana law does not allow a plaintiff to plead a specific amount of money damages, but it *does* permit a plaintiff to allege that the damages sought affirmatively meet or fail to meet a specific jurisdictional threshold.[40] Plaintiffs did not do so here, and in the initial-pleading removal context, courts may not speculate about the jurisdictional

---

[36] R. Doc. 11-3 at pp. 1–2.
[37] R. Doc. 9-1 at pp. 3–4.
[38] R. Doc. 11 at pp. 2–3.
[39] *Chapman*, 969 F.2d at 163; *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir.2013) (same).
[40] *See supra* note 19.

sufficiency of generally stated damages[41] nor hold defendants responsible for whether their "subjective knowledge"[42] suggests removal is proper upon the initial pleadings.

Indeed, certain "practical ramifications" underlie the requirement that plaintiffs be specific and deliberate as to the jurisdictional consequences of the damages they claim.[43] Under this rule, courts operate more efficiently, avoiding "copious time" spent in search of what a defendant knew or "should have known" upon receipt of the initial pleading.[44] Even more, defendants need not "remove cases prematurely" for "fear of accidentally" missing the 30-day window of § 1446(b)(1) when the initial pleading does not obviously satisfy removal criteria.[45] Rather, failing any "specific allegation that damages are in excess of the federal jurisdictional amount,"[46] a Defendant may remove a case within 30 days of receiving the "other paper" from which it may ascertain that the case is removable.[47]

Plaintiffs' state court petition did not satisfy the "bright line rule" that requires a plaintiff to make a *specific allegation* of damages in excess of "the federal jurisdictional amount" to start the 30-day clock for removal. In effect, the petition restated the categories from the first demand letter and added a claim for mental anguish damages. The only specified amount of damages in the petition is the $11,560.88 Plaintiffs allege they are owed under the insurance policy. That level of generality does not equate to a specific allegation,[48] nor did Plaintiffs avail themselves of the option provided by

---

[41] *See, e.g.*, *Welp v. Hanover Ins. Co.*, No. 078859, 2008 WL 235348 (E.D. La. Jan. 28, 2008); *Shaw, et al. v. Wal-Mart Louisiana, LLC, et al.*, 2022 WL 123248, (E.D. La. Jan. 13, 2022).
[42] *Daverede*, 2022 WL 1963713, at *2.
[43] *Mumfrey*, F.3d at 399 (citing *Chapman*, 969 F.2d at 163).
[44] *Id.*
[45] *Id.*
[46] *Chapman*, 969 F.2d at 163.
[47] § 1446(b)(3).
[48] *Welp,* 2008 WL 235348; *Shaw,* 2022 WL 123248.

7

Louisiana law to affirmatively state the $75,000 threshold would be exceeded.[49] As a result, this case was not removable upon service of that initial pleading.[50]

Instead, the May 8, 2023 demand letter, seeking $330,175.01 in damages, was the "other paper" in this case that allowed Defendant to ascertain the case was removable to federal court. Unlike the March 14, 2023 demand letter, the May 8, 2023 demand letter clearly stated an amount in controversy in excess of the $75,000 threshold for diversity jurisdiction. Moreover, it was received after the initial pleadings, produced by a voluntary act of the Plaintiffs, and obviated any need for Defendant to rely on subjective knowledge in its efforts to determine the amount in controversy. Defendant's 30-day period to remove under § 1446(b)(3) began on that day, May 8, 2023, and expired on June 7, 2023, the day it timely filed its notice of removal. Accordingly;

Plaintiffs' Motion to Remand to State Court is **DENIED.**

**New Orleans, Louisiana, this 11th day of September, 2023.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[49] *See* La. Code of Civ. Pro. art. 893(A)(1).
[50] At oral argument, counsel for Plaintiffs urged the Court to follow *Block Law Firm, APLC v. Bankers Ins. Co.*, CV 22-949, 2022 WL 2353378 (E.D. La. June 30, 2022) as an example of how to avoid *Chapman's* "specific allegation rule." That misreads the case. In *Block Law Firm*, Chief Judge Brown ruled that Plaintiffs *had* made a specific allegation that the amount in controversy exceeded $75,000 because the initial Louisiana state court petition sought $58,203.12 in damages for outstanding insurance payments and "penalties against the insurer in an amount not to exceed . . . *two times the damages sustained*." *Block Law Firm,* 2022 WL 2353378, at *4 (omission and emphasis in original). Two times the damages of $58,203.12 was $116,406.24, a specific and unambiguous allegation that the amount in controversy exceeded the $75,000 threshold of § 1332. In this case, no such clarity can be found in Plaintiffs' state court petition. Quite the opposite (*see supra* note 35 and accompanying text), Plaintiffs argue that Defendants should have made a "reasonable inference" as to the jurisdictional sufficiency of damages when served on April 19, 2023.